IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

TIM CALDWELL,                  )
                                     )
         **Plaintiff,**          )
                                     )
**v.**                             )          **No. 07-2242-STA**
                                     )
**BUILDING PLASTICS, INC.,**    )
                                     )
         **Defendant.**        )

_____

**ORDER DENYING DEFENDANT BUILDING PLASTICS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

_____

Before the Court is Defendant Building Plastics, Inc.'s Motion for Summary Judgment (D.E. # 28). Plaintiff Tim Caldwell has filed a response (D.E. # 29), to which the Defendant, with leave of court, has replied (D.E. # 30). Prior to Defendant's filing of the underlying motion, Plaintiff had filed a Motion to Compel that in part sought the production of certain employee files (D.E. # 14). This motion was referred to the Magistrate Judge (D.E. # 18), who granted the motion in part and denied the motion in part (D.E. # 21). Plaintiff timely appealed the Magistrate Judge's Order, and after a hearing on Plaintiff's objections, this Court entered an Order that affirmed the Magistrate's Order in part and Granted Plaintiff's Motion to Compel in part (D.E. # 41). Because the Court ordered Defendant to produce additional discovery that could affect the outcome of the underlying motion, both parties were granted additional time to supplement their briefing (D.E. # 42). Both Plaintiff and Defendant have now filed supplemental briefs (D.E. # 45 & 46), making the underlying motion ripe for adjudication. For the reasons set

1

forth below, Defendant's Motion for Summary Judgment is hereby **DENIED**.

<u>**BACKGROUND**</u>

Plaintiff Tim Caldwell ("Caldwell") was hired by Defendant Building Plastics, Inc. ("BPI") to be the Human Resource Director in June of 2000.  (Statement of Undisputed Facts ¶ 2.)  While employed as BPI's Human Resource Director, Caldwell reported directly to Sherry Nymoen ("Nymoen"), Vice President of Operations for BPI, but additionally reported to and worked closely with Wallace McAlexander ("McAlexander"), BPI's Chief Financial Officer. (*Id.* at ¶ 3.)  In April and May of 2003, Caldwell took a six (6) week leave absence in order to seek medical treatment.  (*Id.* ¶ 5.)  During this absence, BPI continued to pay Caldwell his normal wages.  (*Id.* ¶ 6.)  After returning from his leave, in both 2004 and 2005, BPI chose not to increase Caldwell's discretionary annual bonus calculated for the years 2003 and 2004.  (*Id.* ¶¶ 8-9.)  Instead, the year Caldwell returned from his leave, BPI reduced the amount of Caldwell's annual bonus and the amount of his annual raise.  Over the course of the next few years, Caldwell contends that he complained several times to Nymoen about the reduction in his bonus.

During the week of March 27, 2006, Nymoen gave Caldwell a list of approved 2006 salary increases to compile and disseminate among the respective managers.  (*Id.* ¶ 14.)  On April 5, 2006, Caldwell delivered the approved wage adjustments to McAlexander, at which time Caldwell expressed disagreement with the recommended raises. (*Id.* ¶ 15.)   Caldwell also took this opportunity to bring his reduced bonus to McAlexander's attention.  The discussion became heated, and McAlexander terminated Caldwell's employment this same day.  (*Id.* ¶ 17.)

Plaintiff filed the underlying action for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et. seq.*, the Tennessee Public Protection Act ("TPPA"), Tenn.

Code Ann. § 50-1-304(a), as well as a claim for retaliatory discharge under Tennessee state law. (*Id.* ¶ 1.)  In particular, Plaintiff alleges that because he took six weeks of FMLA leave, his former employer, Defendant BPI, unlawfully reduced the amount of his annual bonus and annual raise.  Plaintiff additionally alleges his employment with Defendant was terminated, because he questioned Defendant's motive and basis for calculating his annual bonuses.  Defendant has denied these claims and has alleged that Plaintiff was not retaliated against or denied any benefit for utilization of FMLA time, but instead any adverse employment action was taken for legitimate purposes, such as decreases in job performance, insubordination, and failure to properly perform his duties.

<u>**ANALYSIS**</u>

Defendant filed the underlying motion for summary judgement as to Plaintiff's claims under the FMLA and TPPA. The Court will address each issue in the order they appear in the motion.

**I.  FMLA Claims**

Defendant asserts that summary judgment as to Plaintiff's FMLA claims is appropriate for several reasons. Defendant initially argues that Plaintiff's entire FMLA claim must fail, because Plaintiff's leave of absence was not protected by the FMLA, since Plaintiff failed to provide proper notice that he was taking FMLA leave, and since Plaintiff continued to receive his regular salary.  Next, Defendant asserts that Plaintiff's interference claim should fail, because upon Plaintiff's return from his leave, Plaintiff was restored to his same position, received his same salary, and continued to receive his same benefits.  Defendant also asserts Plaintiff's interference claim should fail, because whether to give a bonus, and if so, in what amount, are

both discretionary decisions, and thus, Plaintiff cannot maintain that he lost any benefit to which

he was entitled prior to the taking of FMLA leave.  Furthermore, Defendant asserts that

Plaintiff's bonus was reduced for a legitimate business related reason.  Lastly, Defendant asserts

that Plaintiff's retaliation claim must fail, because Plaintiff cannot point to any other similarly

situated employee who did not take leave and who was not subject to a reduced bonus despite

poor performance, and because Defendant has asserted a legitimate business related reason for

Caldwell's termination.

### A.  FMLA Protected Leave

Under the FMLA, an employee who is suffering from a "serious health condition" is

entitled to a total of twelve workweeks of leave during any twelve month period.[1]  Employees

who intend to take FMLA leave must give their employer at least thirty days notice or, if that is

not possible, they must give their employer notice as early as practicable.[2]  If the necessity to

take leave is unforeseeable, employees are generally expected to notify their employer within

one (1) to two (2) days of learning that leave is necessary.[3]  However, notice may not feasible,

and the lack of notice therefore excusable, when a serious health condition makes the employee

unable to provide notice.[4]  Furthermore, the form of notice need not mention the FMLA, rather,

---

[1]  29 U.S.C. § 1612(a)(1).  The statute defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) impatient care in a hospital or hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

[2]  *Id.* § 2612(e).

[3]  29 C.F.R. § 825.303; *see, e.g., Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004).

[4]  29 C.F.R. § 825.503; *see, e.g., Brenneman*, 366 F.3d at 421.

the employee must only request leave for a reason that qualifies under the FMLA.[5]  Whether an employee has provided sufficient notice largely depends on whether the employee gave the employer enough information to reasonably apprise the employer that FMLA leave is requested,[6] and if the employer wants further information, it is the employer's responsibility to ask for it.[7]

Additionally, the FMLA only requires that employers provide employees with twelve weeks of unpaid leave.[8]  However, an employer that provides paid vacation, personal, family, or sick leave may require an employee to use any accrued paid leave as part of his or her twelve week FMLA leave, except when leave is necessary due to a serious health condition that makes the employee unable to perform his or her work functions.[9]  If leave is necessary due to a serious health condition, then an employee may elect to use any accrued paid leave for FMLA purposes.[10]

BPI's first argument is that Caldwell completely failed to provide any notice that he was taking FMLA leave, and thus, his leave could not be considered FMLA protected.  On this argument the key question is whether Caldwell provided BPI with enough information to

---

[5]  29 C.F.R. §§ 825.208(a)(2), 825.303; *see, e.g., Brenneman*, 366 F.3d at 421; *Plant v. Morton Intern., Inc.*, 212 F.3d 929, 935 (6th Cir. 2000).

[6]  *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); *see also Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 488 (6th Cir. 2005).

[7]  29 C.F.R. § 825.303; *see, e.g., Plant*, 212 F.3d at 935 .

[8]  29 U.S.C. § 2612(c).

[9]  *Id.* § 2612(d)(2)(A)

[10]  *Id.*

reasonably apprise BPI that FMLA leave was requested.[11]  The largely undisputed facts show that Plaintiff was admitted to the hospital for emergency colon surgery on Wednesday, April 16, 2003.  (*See* Affidavit of Tim Caldwell; Nymoen Dep. 71-72.)  The following day Caldwell was informed that he was suffering from cancer.  (*See* Affidavit of Tim Caldwell.)  Caldwell states that he contacted his supervisor, Nymoen, on either April 19 or April 20, to inform her of his required treatment and hospitalization.  (*See id.*)  According to Caldwell, he continued to communicate with BPI through Nymoen regarding his cancer treatment.  (*See* Affidavit of Tim Caldwell; Nymoen Dep. 71-72; McAlexander Dep. 27-29; McCoy Dep. 9-12.)  Based on this, it appears Caldwell provided BPI with enough information to place BPI on notice that he was requesting leave for an FMLA qualifying reason.  Although Caldwell may not have mentioned FMLA leave in requesting additional time away from work, he was not required to do so.   As such, Caldwell made a reasonable effort to inform his employer of his need for FMLA leave, or at the very least, has raised a genuine issue of material fact.

BPI next argues that it provides only unpaid leave for employees exercising their FMLA leave rights; however, Caldwell continued to receive his regular salary.  As a result, BPI asserts that Caldwell did not actually take FMLA leave, but instead, only paid sick and vacation leave as allotted by the company.  However, this argument is contrary to certain FMLA provisions.  Namely, an employer that provides paid vacation, personal, family or sick leave may require an employee to use any accrued paid leave as part of their twelve week FMLA leave.[12]  Although BPI asserts they only provide unpaid FMLA leave, the BPI employee handbook states "you may

---

[11]  *Brohm*, 149 F.3d at 523; *see also Moorer*, 398 F.3d at 488.

[12]  29 U.S.C. § 2612(c).

6

elect or may be required to substitute or use any available paid leave (including sick leave and

vacation leave) for some or all of the FMLA leave period."  (*See.* Ex. 5 to Nymoen Dep., BPI's

Associate Handbook 28-29.)  As such, Caldwell's receipt of his salary is not determinative of

whether his leave qualifies as FMLA protected.  Therefore, because Plaintiff has raised a

genuine issue of material fact as to whether his leave was taken pursuant to the FMLA,

Defendant's Motion for Summary Judgment on this issue is **DENIED**.

### B.  FMLA Interference & Retaliation

An employee who has taken leave pursuant to the FMLA is entitled to be "restored by the

employer to the position of employment held by the employee when the leave commenced."[13]

As such, the taking of leave "shall not result in the loss of any employment benefit accrued prior

to the date on which the leave commenced".[14]  Employees returning from leave are not entitled

to "any right, benefit, or position of employment other than any right, benefit, or position to

which the employee would have been entitled had the employee not taken the leave."[15]  If an

employee feels that their employer has unlawfully hindered their benefits as a result of taking

FMLA leave, the Act recognizes two theories of civil liability: the interference theory under 29

U.S.C. § 2615(a)(1) and the retaliation theory under 29 U.S.C. § 2615(a)(2).[16]

### 1.  Plaintiff's Interference Claim

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the

---

[13]  29 U.S.C. § 2614(a)(1)(A).

[14]  *Id.*

[15]  *Id.* § 2614(a)(2), (a)(3)(B).

[16]  *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir.2006)).

exercise or the attempt to exercise any right provided under [the FMLA]."[17]   Under the

interference theory, "any violation of the FMLA-or of the regulations implementing

it-constitutes ... unlawful interference."[18]   To establish a claim for interference, the Plaintiff must

demonstrate by a preponderance of the evidence that: (1) He is an "eligible employee" as defined

by 29 U.S.C. § 2611(2); (2) the defendant is an "employer" as defined by 29 U.S.C. § 2611(4);

(3) the employee was entitled to FMLA leave pursuant to 29 U.S.C. § 2612(a)(1); (4) the

employee gave the employer notice of his intention to take leave as defined by 29 U.S.C. §

2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled,

or has "somehow used the leave against [the employee] in an unlawful manner, as provided in

either the statute or regulations."[19]

Applying these elements to the current case, it is largely undisputed that Caldwell is an

eligible employee; BPI is a qualifying employer; and Caldwell was entitled to FMLA leave.  On

the fourth factor, as stated previously, Caldwell has at least raised a genuine issue of material

fact as to whether he gave BPI sufficient notice.  On the fifth factor, Caldwell claims that

because his annual bonus and raise were both reduced for the year he returned from FMLA

leave, BPI has unlawfully interfered with his rights under the FMLA.  More specifically,

Caldwell states that while his 2002 annual bonus was for $6,000 after taking FMLA leave in

2003 his bonus reduced to $5,000.  (*See* Caldwell dep. 14:18-15:1.)  Caldwell also asserts that

his bonuses in the subsequent years were also affected by his taking of FMLA leave, as the

---

[17]   *Id.* § 2615(a)(1).

[18]   29 C.F.R. § 825.220(b); *Brenneman*, 366 F.3d at 421.

[19]   *Wysong*, 503 F.3d at 447.

amount he received remained at $5,000 during his time with BPI despite having no record of decreased performance.  (*See* Nymoen Dep. 64:4-6.)  Furthermore, Caldwell asserts that his supervisor informed him that taking unpaid leave could affect the amount of his annual bonus. (*See* Caldwell Dep. 13:9-14:13, 18:1-10; Nymoen Dep. 73.)

"[A]n employer may [not] use an employee's 'taking of FMLA leave as a negative factor in [an] employment action....'"[20]  As the Sixth Circuit has explained, "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled."[21]  Courts have held that bonuses are a covered protected benefit under the broad scope of the FMLA.[22]  However, the FMLA does not contemplate that all bonuses will be treated similarly.  Although the regulation defining equivalent positions contemplates bonus pay as a component of the equivalency determination, the regulation draws a distinction between bonuses given for production or job-related performance (such as working a certain number of hours or producing a certain amount of earnings) and those given for absence of occurrences (such as a record of no accidents or complaints).[23]  More specifically, production bonuses are those types of bonus programs that "require some positive effort on the employee's part at the workplace," as

---

[20]  29 C.F.R. § 825.220(c); *see, e.g., Brenneman*, 366 F.3d at 422.

[21]  *Wysong*, 503 F.3d at 447.

[22]  *See Estes v. Meridian One Corp.*, 6 Fed. Appx. 142, 145-46 (4th Cir. 2001) ("'If the employee is on FMLA leave during any part of the period for which the bonus is computed, the employee is entitled to the same consideration for the bonus as other employees on paid or unpaid leave.'"); *Cornelius v. CMM of Ky., LLC*, No. 3:05-CV-449-R, 2006 WL 517594, *2 (W.D. Ky. Mar. 1, 2006); *Dierlam v. Wesley Jessen Corp.*, 222 F. Supp. 2d 1052, 1057 (N.D. Ill. 2002).

[23]  29 C.F.R. § 825.215(c)(2).

distinguished from a bonus that merely rewards an employee for "compliance with rules."[24] Importantly, the regulations expressly do not account for whether the bonus is discretionary or non-discretionary, but instead, distinguishes bonuses for achievement of specified goals from other bonuses.[25]

As an initial matter the Court must determine whether BPI's annual bonus constitutes an FMLA protected benefit. Although BPI maintains these bonuses are not protected due to their discretionary nature, the evidence currently before the Court indicates that there remains a genuine issue of material fact on this issue. Pursuant to FMLA regulations, bonuses that require employees to accomplish a specified goal can be reduced according to time taken under the FMLA; however, bonuses which merely reward for the absence of occurrences cannot.[26] According to BPI, bonus decisions depend on two things, employee performance and company profitability. (*See* McAlexander Affidavit ¶ 9.) They do not, however, require that employees accomplish any sort of specified goal in order to be entitled to them.[27] While BPI may account for performance in making its bonus decisions, the current evidence indicates that an employee will receive an amount based on company profitably, and the amount may be reduced if the employee has failed to adequately perform. As such, it appears that BPI bonuses are calculated

---

[24] *Sommer v. The Vanguard Group*, 461 F.3d 397, 404 (3rd Cir. 2006) (citing1994 DOL Opinion Letter).

[25] 29 C.F.R. § 825.215 ("Equivalent pay includes any bonus or payment, whether it is discretionary or non-discretionary....").

[26] 29 C.F.R. § 825.215; *see, e.g.*, *Sommer*, 461 F.3d at 404.

[27] In McAlexander's deposition, he did state that bonuses in the credit department were based on certain specified performance goals; while bonuses everywhere else were merely discretionary. (McAlexander dep. 55:4-9.)

according to company profitability and the absence of inadequate performance.  This is not the type of bonus that may be reduced by the taking of FMLA leave.

Next, the Court turns to BPI's argument that Plaintiff's bonus was reduced due to Plaintiff's deficient performance, not the taking of FMLA leave.  In support of their argument, BPI points to two pieces of evidence, the record of another employee named Guy Helmers and an incident that occurred in August of 2003, in which Caldwell allegedly conducted an employee termination interview in a manner that was inconsistent with BPI's employment practices.

Beginning with the employee termination interview, BPI contends that Caldwell's bonus was reduced in 2003, because Caldwell had improperly terminated an employee in August 2003. (Affidavit of Wallace McAlexander ¶ 7.)   According to BPI, Caldwell failed to consult executive management prior to an employee's termination.  BPI contends Caldwell's error was especially egregious, because the employee had recently filed a harassment charge, which was in the process of being investigated and was ultimately settled by the company.  (*Id.*)  BPI maintains that the decision to decrease his bonus was the direct result of the unauthorized employee termination.  (*Id.* at ¶ 8.)

BPI also relies on the employment record of Guy Helmers to establish that BPI did not treat Caldwell any differently than it would any other employee who is deficiently performing. According to BPI, Helmers, who did not take FMLA leave in either 2003 or 2004, actually had his bonus completely eliminated in 2004 due to his poor performance.  (*See* Nymoen Dep. Ex. 4; Pl.'s Supp. Memo. on Def.'s Mot. for Summ. J. Ex. 2.)  As such, BPI maintains that because Helmers and Caldwell were treated the same under similar circumstances, it could not have interfered with Caldwell's FMLA rights, i.e. both employees had their bonuses reduced due to

poor performance not because of the taking of any FMLA time.

In response, Caldwell contends that it is misleading to compare Helmers's treatment to his.  In support, Caldwell points out that in 2002 Helmers received a written warning about his performance, advising Helmers his performance was unacceptable and indicating the necessity to implement remedial steps.  (Pl.'s Supp. Memo. on Def.'s Mot. for Summ. J. Ex. 2.)  Although Helmers's warning indicated his performance had become seriously deficient, he still received a $10,000 bonus for 2002.  (*See* Nymoen Dep. Ex. 4.)  Helmers's performance apparently did not improve in 2003, and he was replaced in January 2004.  (*See* Pl.'s Supp. Memo. on Def.'s Mot. for Summ. J. Ex.3.)  Despite the lack of improvement in Helmers' performance, he received yet another $10,000 bonus in 2003.  (*See* Nymoen Dep. Ex. 4.)  Helmers's bonus was then eliminated in 2004, because he was demoted and replaced by another individual.  (*See* Pl.'s Supp. Memo. on Def.'s Mot. for Summ. J. Ex.3.)  Caldwell asserts Helmers's situation is not comparable to his, since Caldwell was never issued a poor performance review, nor did he ever receive a written warning.  (*See* Nymoen Dep. 64:4-6.)  Also, unlike Helmers, Caldwell's bonus was reduced while still retaining his managerial position.  According to Caldwell, Helmers's record does not indicate that they were treated the same under similar circumstances, but instead, it demonstrates that Helmers was actually treated better.  Finally, Caldwell contends that Nymoen had informed him the taking of unpaid leave could affect his bonus.

In sum, Defendant argues that Plaintiff's improper termination interview and a comparison to Guy Helmers demonstrate that Plaintiff's deficient performance was the sole reason his bonus was reduced.  On the other hand, Plaintiff argues that Nymoen's testimony and the differences between his and Guy Helmers records demonstrate that Defendant improperly

reduced his bonus in violation of the FMLA.  Based on this evidence, it appears that Plaintiff has offered sufficient evidence to create a genuine issue of material fact as to whether Defendant unlawfully used his leave against him in calculating his annual bonus.[28]

Plaintiff additionally claims that BPI unlawfully interfered with his FMLA rights when they reduced his annual raise from $1.00 an hour, the amount he had received the previous year, to $0.90, the amount he received the year he took FMLA leave.  Again, BPI relies on Caldwell's deficient performance, particularly Caldwell's unauthorized termination interview, to demonstrate that Caldwell was not denied any FMLA benefit to which he was entitled.  In response, Caldwell asserts that his raise was implemented in May of 2003, one month after his taking of FMLA leave, while the employee termination interview occurred in August of 2003. As such, Caldwell argues that the employee termination interview occurred too late to have affected his May 2003 raise.  Again, it appears that Plaintiff has offered sufficient evidence to create a genuine issue of material fact as to whether Defendant unlawfully used his leave against him when calculating his annual raise.  Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's interference claim is hereby **DENIED**.

### 2.  Plaintiff's Retaliation Claim

Employers are prohibited from "discharg[ing] or in any other manner discriminat[ing] against an individual for opposing any practice made unlawful by [the FMLA]."[29]  An FMLA retaliation claim is different from an interference claim, because under a retaliation theory, the

---

[28]  *Wysong*, 503 F.3d at 447.

[29]  29 U.S.C. § 2615; 29 C.F.R. § 825.220.

intent of the employer matters.[30]  "The employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights."[31]  Thus, employers may not "'discriminat[e] against employees ... who have used FMLA leave,' nor can they 'use the taking of FMLA leave as a negative factor in employment actions.'"[32]

Retaliation claims may be proved with either direct or indirect evidence.[33]  "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[34]  As the Sixth Circuit stated in *Dicarlo v. Potter*:

> [D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group. The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition. Finally, an employee who has presented direct evidence of improper motive does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action. Rather, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.[35]

If on the other hand, the plaintiff presents indirect evidence of retaliation the Court must

---

[30]  *Edgar*, 443 F.3d at 508.

[31]  *Id.*

[32]  *Arban* v. *West Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003) (quoting 29 C.F.R. § 825.220(c)).

[33]  *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004);

[34]  *Id.*; *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

[35]  358 F.3d at 415; *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).

14

evaluate the claim under the three-step *McDonnell Douglas* burden-shifting framework.[36]  First, the employee must make a prima facie case of unlawful retaliation.[37]  To establish a prima facie case of retaliation the employee must demonstrate that: (1) He engaged in a statutorily protected activity; (2) he suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity.[38]  Once the plaintiff has established his *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its action.[39]  If the employer has articulated a legitimate reason for its action, the plaintiff must then demonstrate that "the proffered reason was not the true reason for the employment decision."[40]

Here, BPI asserts that Caldwell's claim for retaliation must fail, because Caldwell cannot point to any other similarly situated employee who was exhibiting poor work performance, who was not subject to a bonus reduction, and who did not take FMLA leave.  BPI also contends that Caldwell was terminated due to the improperly conducted employee termination interview and for insubordination.  Again BPI points to Guy Helmers as evidence that Caldwell's bonus was not reduced for a retaliatory reason, but instead, was reduced due to poor work performance.

In response, Caldwell claims there are two pieces of direct evidence of BPI's retaliation.

---

[36]  *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) ("An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglas*.").

[37]  *Bell v. Prefix, Inc.*, 321 Fed. Appx. 423, 426 (6th Cir. 2009).

[38]  *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000).

[39]  *Bell*, 321 Fed. Appx. at 426; *Morris*, 201 F.3d at 792-93.

[40]  *Bell*, 321 Fed. Appx. at 426; *Morris*, 201 F.3d at 792-93.

First, Caldwell asserts that Nymoen expressly told him that his 2003 annual bonus would be affected, because the company had continued to pay him during his leave of absence.  And second, Caldwell claims that McAlexander terminated him as a direct result of addressing his concern that BPI was unlawfully interfering with his FMLA rights.  Regardless, Caldwell asserts that he can establish his *prima facie* case of retaliation, because (1) he took FMLA protected leave; (2) BPI was aware he was taking leave and the reason for his leave; (3) he suffered an adverse employment action when he was terminated for complaining about BPI's alleged FMLA violation; and (4) the adverse action followed immediately after he expressed his concerns.

Looking first at whether Caldwell has presented direct evidence that BPI unlawfully retaliated against him, it appears that even though Nymoen testified that in 2003 she informed Caldwell taking unpaid leave could affect the amount of his annual bonus, this is not necessarily direct evidence that two to three years later, in 2006, McAlexander would terminate him for a discussion regarding whether the company violated the FMLA by reducing his bonus.[41] Additionally, although Caldwell was fired at the conclusion of this discussion, this alone does not demonstrate that Caldwell's employment was terminated in retaliation for exercising his FMLA rights, as both Caldwell and McAlexander stated that they discussed other items.  Both items that Caldwell contends is direct evidence would "require a factfinder to draw inferences in order to conclude that the challenged employment action was motivated at least in part by

---

[41]  *See, e.g.*, *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548-49 (6th Cir. 2004) (employer's nebulous remarks about general need to lower average age of workforce and stray comment that "the older people should go, bring in some new blood," made years before employees' termination, were not direct evidence of unlawful age bias).

prejudice against members of the protected group."[42]  As such, the *McDonnell Douglas* burden

shifting framework must be applied.

Applying that framework here, it appears that Caldwell has presented sufficient evidence

to make out his prima facie.  Caldwell took FMLA protected leave.  BPI was aware of his leave

and the reason for his leave.  His termination was an adverse employment action, and the close

temporal proximity between his complaining and his termination suffices to demonstrate the

causal connection necessary at this stage of the inquiry.[43]  Although BPI asserts that Caldwell's

termination was the result of Caldwell's poor job performance and insubordination, the

deposition testimony of both McAlexander and Nymoen indicate that except for the incident

with the improper employee termination in 2003, they neither had nor knew of any performance

issues with Caldwell in 2004 or 2005.  (McAlexander dep. 50:8-24; Nymoen 64:4-6.)  BPI

asserts that Caldwell's performance actually prompted them to solicit a replacement by posting

an ad on Monster.com.  (Nymoen dep. Ex. 6.)  However, Caldwell still was recommended for a

$1.25 raise and was scheduled to attend an out of state human resources seminar in May 2006

that was to be paid for by BPI.  (Nymoen dep. 106:1-107:7.)  Additionally, Caldwell termination

immediately followed his discussion with McAlexander regarding his bonus reduction.

Although temporal proximity alone is usually insufficient to satisfy Caldwell's burden,

"suspicious timing is a strong indicator of pretext when accompanied by some other,

independent evidence."[44]

---

[42]  *DiCarlo*, 358 F.3d at 415.

[43]  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

[44]  *Campbell v. Washington County Public Library*, 241 Fed. Appx. 271, 275 (6th Cir.
2007) (holding that an employee had established a prima facie case of discrimination, in part

Viewing the evidence in the light most favorable to Caldwell, it appears there are material factual disputes that preclude summary judgment under these circumstances.  A reasonable jury could view this evidence collectively and conclude that Caldwell's complaints regarding the effect of his FMLA leave on his annual bonus was a motivating factor in the decision to terminate him.  As such, BPI's Motion for Summary Judgment on Plaintiff's retaliation claim is hereby **DENIED**.

### IV.  The Tennessee Public Protection Act and Common Law Retaliatory Discharge Claims

Defendant's last argument on summary judgment is that Plaintiff has failed to state a claim under the Tennessee Public Protection Act ("TPPA").[45]

To prevail on a whistleblower claim under the TPPA, a plaintiff must prove by a preponderance of the evidence:

> (1) the plaintiff's status as an employee of the defendant; (2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities; (3) the employer's discharge of the employee; [and] (4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee.[46]

The statue defines "illegal activities" as "activities that are in violation of the criminal code or civil code of this state or the United States or any regulation intended to protect the public

---

because she had filed a complaint with the Department of Labor and because there is evidence her supervisor was upset about Campbell's complaint); *DeBoer v. Musashi Auto Parts, Inc.*, 124 Fed. Appx. 387, 393-94 (6th Cir. 2005).

[45]  T.C.A. § 50-1-304.

[46]  *Treadaway v. Big Red Powersports, LLC*, 611 F. Supp. 2d 768, 781 (E.D. Tenn. 2009); *Hubrig v. Lockheed Martin Energy Sys., Inc.*, No. 03A01-9711-CV-00525, 1998 WL 240128, *7 (Tenn. Ct. App. May 4, 1998).

health, safety or welfare."[47]  The TPPA not only applies to those individuals who have reported

an illegal activity, but also to those employees who have a reasonable belief there has been a

violation and reports it in good faith.[48]

> To bring a common law whistleblower retaliatory-discharge claim, a plaintiff must prove:

> (1) that an employment-at-will relationship existed; (2) that the employee was discharged, (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reasons which violates a clear public policy evidence by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.[49]

While the TPPA requires the plaintiff to show their whistleblowing was the sole, or "exclusive

causal," reason for their termination, at common law, the whistleblowing need only be a

"substantial factor" in her termination.[50]

> BPI raises two arguments regarding whether Caldwell has met his burden under the

TPPA.  First, BPI contends that the activity of questioning pay increases does not constitute

"illegal activity" as defined by the statute.  However, violations of the FMLA qualify as "illegal

activity" as contemplated by the TPPA.[51]  Regardless, the TPPA protects those individuals who

---

[47]  *Id.* § 50-1-304(b).

[48]  *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997).

[49]  *Treadaway*, 611 F. Supp. 2d at 781; *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002); *Collins v. AmSouth Bank*, 241 S.W.3d 879, 884 (Tenn. Ct. App. 2007).

[50]  *Treadaway*, 611 F. Supp. 2d at 781; *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002).

[51]   T.C.A. § 50-1-304(b) (stating that illegal activities encompass violations of the criminal or civil code intended to protect the public health, safety, and welfare).

19

have a reasonable, albeit mistaken, belief that a law has been violated and who reports the violation in good faith.[52]  Caldwell testified that in approaching McAlexander about his reduced bonuses, he expressed concern that any reduction due to his leave would be in violation of the FMLA.  As such, Caldwell has at least raised a genuine issue of material fact as to whether he held a reasonable belief that the FMLA had been violated.

BPI next argues that Caldwell cannot prove that the sole reason for his discharge was his failure to remain silent.  However, as stated previously, Caldwell has adduced sufficient evidence to create a genuine issue of material fact regarding the cause of his discharge.  The evidence currently before the Court raises questions as to whether Caldwell's discussion regarding his bonus reduction, his allegedly poor performance and insubordination, both, or neither contributed to BPI's decision to terminate him.  Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's TPPA claim is hereby **DENIED**.

## CONCLUSION

Because there remains genuine issues of material fact as to Plaintiff's FMLA interference and retaliation claims, as well as, Plaintiff's TPPA claim, Defendant's Motion for Summary Judgment is hereby **DENIED**.


**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 25th, 2009.

---

[52]  *Mason*, 942 S.W.2d at 472.

20